[Civil No. 3539. Filed October 7, 1935.]

[49 Pac. (2d) 1003.]

# W. T. FISHER, Appellant, v. JAMES PENDER-GAST, Jr., Appellee.

Messrs. Akers & DeCamp, for Appellant.

Mr. William J. Fellows and Mr. John E. Hall, for Appellee.

LOCKWOOD, C. J.—James Pendergast, Jr., hereinafter called plaintiff, brought suit against W. T. Fisher, hereinafter called defendant, for damages which plaintiff alleged he had suffered by reason of the breach of a certain written contract of lease entered into between him and defendant. The case was tried to a jury,

which returned a verdict in favor of plaintiff in the sum of $500, and after the usual motion for new trial had been overruled this appeal was taken.

The facts shown by the record, stated as strongly in behalf of plaintiff as the evidence will permit, as under the verdict of the jury we must presume them to exist, may be set forth briefly as follows: Defendant was the owner of certain farm land in Maricopa county, Arizona. At some time in the middle of August, 1933, plaintiff and defendant entered into a written contract whereby the latter leased said lands to the plaintiff on what is commonly known as a crop-sharing contract. A day or two later the original written contract was modified by a supplementary written contract. We think it unnecessary to set forth these instruments in full. They were evidently prepared by some person not skilled in the drawing of legal documents, but the original one is unambiguous in its terms. The supplementary one shows on its face that it required further agreements, either oral or written, to make it effective, though there is nothing ambiguous about its terms, so far as they go. Their legal effect was therefore for the court, and we think that effect may be set forth succinctly as follows: The original contract was for one year certain from August 1st, subject to renewal upon the agreement of both parties. It provided for the raising of a crop of wheat upon the land in question, plaintiff to furnish all labor and defendant the land, water, and seed. The expense of the threshing, sacking, and holding of the wheat was to be borne equally by both parties, and the returns from the sale of the crop was to be equally divided. The modification of the original contract provided, in substance, that the parties might put some of the land in lettuce as a first crop to be followed by a crop of

wheat, or in case the parties should so agree, by alfalfa and barley, and that the term of the lease should be extended for one month over the original year. There was, however, no definite agreement that any of the land should be planted to lettuce, alfalfa, or barley, or any statement as to the terms under which such planting should be done, if at all. The defendant did, though, retain the privilege of selling the property by paying plaintiff for what labor he had expended upon it up to the time of the sale, and the provisions in regard to the planting of the wheat were expressly continued in force.

Plaintiff entered upon the premises and commenced preparing it for a crop, it having been orally agreed between him and defendant that one-half of the land, or twenty acres, should be planted to lettuce. In accordance with the custom prevailing in Maricopa county in regard to lettuce crops, he secured a certain cash advance from one of the lettuce buyers of the district to pay for part of the expense of putting in the crop. Just as he was about to plant the lettuce, defendant notified him not to proceed, as he was about to sell the place. The sale, however, fell through, and as it was then too late to plant lettuce, plaintiff was about to proceed with the wheat crop when defendant insisted that under the terms of the lease he was entitled to half of the cash advance made to plaintiff for the planting of lettuce, as aforesaid. Plaintiff claimed that under the local custom such advance was to be used in paying for the labor necessary to put in the crop and repaid to the buyer out of the proceeds of the crop, and refused to pay defendant any of the advance. Thereafter, and before any wheat crop could have been planted, defendant ejected plaintiff from the premises, whereupon this action was brought.

There are two causes of action, the first for profits on the crops which were to be grown on the premises, and the second for labor performed by plaintiff under the contract. The court took the second cause of action away from the jury, so we need not consider it.

There are five assignments of error upon which defendant bases several propositions of law which he contends require a reversal of the judgment. The first is that a party may not plead one cause of action and recover judgment on another. This is good as a statement of abstract law, but we cannot see its application to the present case. The suit is for damages for prospective profits on a wheat crop which was to be raised. The evidence was all directed to that issue, and the instructions of the court were based upon that theory.

The second proposition of law is that it is error for the court to assume in its instructions to the jury the existence of a fact which is in issue, where the evidence is in conflict. This is again a correct abstract statement of law and is presumably based on the following instruction of the court:

"You are instructed that should you find for the plaintiff by the preponderance of the evidence, as I have instructed you herein, you will fix his measure of damages, if any he suffered, sufficiently to compensate him for the losses sustained by him through pasturage and through the loss of his share of profits therein, and to his share of profits in the matured wheat crop, not to exceed the amount prayed for and for a period not to exceed one year."

The objection is that it assumes a crop of wheat was matured on the premises in question by plaintiff when the evidence shows plainly that he did not even plant the wheat. The instruction might have been more carefully worded perhaps; but, in view of the

fact that no one claimed any wheat was ever planted by plaintiff, we think the jury could not have been misled into believing the court had intended to say that it had been so planted, but understood what was obviously the meaning of the court, to wit, the crop which would have matured had defendant been allowed to plant it. Under the circumstances we think the error, if any, does not call for a reversal of the case.

The third and fourth propositions of law are that in order to recover damages, evidence as to the amount of such damages must be introduced. This again is a correct statement of the law, but we cannot see its applicability. The evidence of one witness is to the effect that the value of the winter pasturage on a wheat crop of the kind which it was contemplated would be planted by plaintiff would amount to approximately $5 per acre, and there was testimony that at least twenty acres could and would have been so pastured. There is further evidence that this very land was farmed to wheat the year before it was leased to plaintiff on a similar contract to that involved herein, and that in such year the net profits from the wheat crop amounted to approximately $40 per acre. Since the land leased by defendant to plaintiff was about forty acres, there was evidence which would sustain a finding by the jury that plaintiff's share of the profits had he not been ejected by defendant would have amounted to approximately $800. The verdict was for $500 only. We are of the opinion that this evidence was sufficient to sustain the finding of the jury as to the amount of damages.

It is true that there was testimony in the case on behalf of defendant from which the jury might have found that defendant was justified in ejecting plaintiff from the premises, but their verdict shows

that they did not believe defendant's witnesses, and we are foreclosed from questioning their conclusion as to the weight and sufficiency of the evidence.

For the foregoing reasons the judgment of the superior court of Maricopa county is affirmed.

McALISTER and ROSS, JJ., concur.